UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

_____

RAPHAEL DEON HOLIDAY,

        Petitioner,

    v.                                  NO. 4:11-CV-1696

RICK THALER, Director,

        Respondent.

_____

## REPLY TO ANSWER OF RESPONDENT THALER

TO THE HONORABLE U.S. DISTRICT COURT:

COMES NOW Petitioner, RAPHAEL DEON HOLIDAY, and respectfully submits this Reply to the Answer of Respondent Thaler (Doc. No. 16):

### I.     PROCEDURAL DEFAULT

The Director argues that Holiday has defaulted federal claims 50-53 (misleading testimony by State's expert DeHaan) and 54-58 (IAC claims) because the state judge signed prosecution drafted findings and conclusions holding that the federal claims were procedurally defaulted.  The Director's contentions are incorrect.

Several years ago Texas prosecutors began asking state courts to write that capital inmates' federal constitutional claims were "procedurally barred" for failure to comply with state law contemporary objection rules. This permitted those prosecutors to argue later to federal

judges that they could not review the inmate's federal claim under section 2254(d) because a

state court had already found it "procedurally barred."  The concept of procedural bar, however,

is a federal rule in which a federal constitutional claim can be barred from review "[w]hen a

petitioner fails to properly raise his federal claims in state court" --- in other words, properly

exhaust in the correct manner. *See Cone v. Bell*, 556 U.S. 449, 465-66 (2009) ("the adequacy of

state procedural bars to the assertion of federal questions . . . is not within the State's prerogative

finally to decide; rather, adequacy is itself a federal question.") (internal citations omitted).

## II.      RESPONDENT THALER MISCOMPREHENDS THE IMPORT OF *APPRENDI* AND *RING*

The State's response to Holiday's *Apprendi/Ring* challenge is mistaken.  (State's Br. at

68-70); *accord Holiday v. State*, 2006 Tex. Crim. App. Unpub. LEXIS 737, *81-82.

The State's argument that "the mitigation issue is not an element of the offense of capital

murder nor is it an aggravating circumstance" (State's Br. at 70)  was contrary to clearly

established Supreme Court precedent as established by *Ring v. Arizona,* which was rendered well

before the Court of Criminal Appeals decided *Holiday*.  *Ring v. Arizona,* 536 U.S. 584 (2002).

Indeed, this exact argument was explicitly addressed, and rejected, in *Ring*.  *Ring*, 536 U.S. at

603-09 (Explaining Arizona's argument that the a judge's finding of aggravating factors

permitting the death penalty to be imposed does not increase the possible punishment range for

those convicted of first degree murder because the punishment for such an offense is "death or

life imprisonment," is irreconcilable with *Apprendi*.).  *Ring* held that the Sixth Amendment

applies to fact finding necessary for putting a person to death.  *Id.* at 609.   In other words,

*Apprendi* applies to capital sentencing schemes where factual findings are necessary to a verdict

of death.  Those factual findings "must be submitted to a jury, and proven beyond a reasonable doubt."  *Apprendi v. New Jersey,* 530 U.S. 466, 490 (2000).

Before a defendant may be sentenced to death in Texas, the jury must answer statutory special issues in a certain way.  *See* TEX. CODE CRIM. PRO. ART. 37.071 (Art. 37.071).  Pursuant to Art. 37.071, sec. 2(b), the jury was first asked the following question:  "Do you find beyond a reasonable doubt that there is a probability that the defendant, Raphael Deon Holiday, would commit criminal acts of violence that would constitute a continuing threat to society?"  This instruction complies with the *Ring* requirement that the jury find this 'aggravating factor' beyond a reasonable doubt before death can be imposed.

The jury in Holiday's case answered the first special issue in the affirmative and was instructed to move onto the second special issue:  "Do you find from the evidence, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, Raphael Deon Holiday, that there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentenced be imposed?"  *See* Art. 37.071(e)(1).  By answering this special issue in the negative, a jury sentences a defendant to death.  If this second special issue encompassed only mitigating factors, then *Ring* would not apply.  However, Texas allows the jury to consider aggravating factors during the consideration of the second special issue, without requiring those aggravating factors to be proven beyond a reasonable doubt.  *See Jackson v. State,* 992 S.W.2d 469, 478 (Tex. Crim. App. 1989) ("[W]e have recently recognized that aggravating circumstances can be considered in connection with the mitigation special issue.").  This allows a jury who believes there are sufficient mitigating factors to warrant a life sentence to overlook those mitigating factors on the grounds that they are outweighed by

aggravating factors.  The Constitutional problem is these aggravating factors do not have to be proven beyond a reasonable doubt.

Respondent Thaler basically argues the jury was instructed that aggravating factors used in the mitigation special issue had to be proven beyond a reasonable doubt.  *Reply Brief* at 110-111.  The state basis this argument on the instructions in the jury charge related to extraneous offenses or bad acts.  The jury was instructed the extraneous offenses or bad acts must be proven by the state beyond a reasonable doubt.  *Id.*  However, the state overlooks that the jury was also instructed to "consider all evidence submitted to you during the whole trial as to the defendant's **background or character** . . . that militates for or mitigates against the imposition of the death penalty" in reaching its decision on the special issues.  S*ee* TEX. CODE CRIM. PRO. ART. 37.071 § 2 (d)(1).  Also, in special issue number two the jury was specifically instructed to take "into consideration all of the evidence, including the . . . defendant's character and background" in deciding if there were sufficient mitigating circumstances to warrant a life sentence.  These instructions allowed the jury to take into account aggravating background or character evidence in deciding special issue number two, but failed to instruct the jury that it could only take this aggravating evidence into account if it was proven beyond a reasonable doubt.

There were multiple arguments made by the prosecution in its closing which could be seen as aggravating factors to be considered in mitigation, and which also would not be covered by the extraneous bad acts or offenses instruction.  These are all arguments which the jury could use as aggravating factors to rule against Holiday in the mitigation special issue, and because the jury was specifically instructed to consider character and background in deciding that special issue it is likely these arguments affected the jury's verdict.  However, the jury was never instructed it could only consider aggravating factors when answering the mitigation special issue

if they were proven beyond a reasonable doubt. This problem was compounded by the fact that special issue number two specifically permitted the jury to take the "defendant's character and background" into account, and that the jury was previously instructed that character or background evidence could "militate[] for or mitigate[] against" a sentence of death.

Holiday does not argue that the state should have to prove the lack of mitigating circumstances beyond a reasonable doubt. Instead, Holiday argues that the state should have to prove any aggravating factors considered by the jury when deciding the mitigation special issue beyond a reasonable doubt. This is based on Texas's own rule which allows a jury to consider aggravating factors when deciding the mitigation special issue. *See Jackson v. State,* 992 S.W.2d 469, 478 (Tex. Crim. App. 1989). It is entirely possible that a jury would find that there were sufficient mitigating factors to warrant a sentence of life, but that these factors, when balanced against aggravating factors which were not proven beyond a reasonable doubt, are no longer sufficient to warrant a life sentence. Thus, unproven aggravated factors in Texas can convert a life sentence to a death sentence. Because the aggravating factors considered by Texas capital juries during their consideration of the mitigation special issue are "the functional equivalent of an element of a greater offense," the Sixth Amendment requires that they be submitted to a jury and proven beyond a reasonable doubt. *Ring*, 536 U.S. at 609 (*citing Apprendi*, 530 U.S., at 494, n. 19).

### III.   TEXAS'S 12/10 RULE IS UNCONSTITUTIONAL

Holiday argues that the Texas' capital sentencing scheme, by affirmatively misleading jurors about their individual ability to give effect to their personal belief regarding mitigation, violates the Eighth and Fourteenth Amendments. This claim is based on *Mills v. Maryland*, where the Court ruled that the petitioner's sentence could not stand where it was possible that

some "jurors were prevented from considering factors which may call for a less severe penalty

[than death.]" 486 U.S. 367, 376 (1988).  As the Fifth Circuit has repeatedly recognized,

"[s]ubsequent to *Mills*, the Supreme Court has explained that 'Mills requires that each juror be

permitted to consider and give effect to mitigating evidence when deciding the ultimate question

whether to vote for a sentence of death.'" *See, e.g., Miller v. Johnson*, 200 F.3d 274, 288 (5th

Cir. 2000) (citing *McKoy v. North Carolina*, 494 U.S. 433, 442–43, 110 S.Ct. 1227, 1233, 108

L.Ed.2d 369 (1990)); *Jacobs v. Scott*, 31 F.3d 1319, 1328 (5th Cir. 1994).

The constitutional defect with Texas' current jury instructions is that they, by statute and

as applied in Holiday's case, mislead jurors about their individual ability to give effect to

mitigating circumstances.   Although Texas' sentencing statute gives individual jurors the power

to prevent the death penalty if they believe mitigating circumstances call for a sentence of life,

that same statute also misleads jurors into believing their individual belief is immaterial unless

they are able to persuade nine of their fellow jurors that their view of the evidence is correct. *See*

TEX. CODE CRIM. PRO. ART. 37.071 (Art. 37.071).[1]  Holiday does not argue that it is necessary to

instruct jurors about the consequences of a single holdout juror although that would give

meaning to Art. 37.071 Sec. 2 (g) (if the jury is unable to answer either of the special issues the

court shall sentence the defendant to life in prison).[2]  Rather, Holiday argues that Texas'

sentencing scheme misleads jurors about their individual ability to "give effect to mitigating

---

[1] In judging the constitutionality of the of a capital sentencing statute, a court must ask how a reasonable juror could view his or her role under the statutory scheme. *California v. Brown*, 479 U.S. 538, 541 (1985).

[2] Petitioner understands that the Eighth Amendment does not require that the jurors be instructed as to the consequences of their failure to agree. *Jones v. United States*, 527 U.S. 373, 381 (1999). However, a jury cannot be "affirmatively misled regarding its role in the sentencing process." *Romano v. Oklahoma*, 512 U.S. 1, 9 (1994). The "12-10" rule produces this type of misleading effect. In fact, it misleads and diminishes the individual role of each juror in the assessment of punishment by suggesting that a life sentence cannot be assessed unless ten jurors believe a life sentence is appropriate.

evidence when deciding the ultimate question whether to vote for a death sentence." *McKoy*, 494 U.S. at 442-43.

The state replies that this claim has been consistently rejected by the Fifth Circuit on two grounds: both on the merits and because the argument is *Teague* barred. (State's Br. at 34 and 66). However, the Fifth Circuit in rejecting this claim has repeatedly relied upon cases decided before Texas Code of Criminal Procedure 37.071 was drastically changed in September of 1991, even when in denying this claim for post-1991 cases. In so doing the Fifth Circuit has not addressed the fact that the Texas Sentencing Scheme has changed, or how this change affects the analysis of this claim.

Before 1991, Texas' death penalty sentencing scheme consisted of asking Jurors a series of three questions:

> (1)    whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;
>
> (2)    whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and
>
> (3)    if raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased.

Art. 37.071(b) (Supp.1975-1976).

These questions remained until the law was drastically changed in September of 1991.

If the jurors unanimously agreed that each of these questions had been proven beyond a reasonable doubt, then they answered them 'yes,' and a sentence of death would result. *Id.* If the jury answered any of these questions 'no,' then life imprisonment would result. *Id*. Much like today, a yes answer had to be unanimous and a no answer had to be supported by ten of the jurors. *Id*.

Although the pre-1991 sentencing statute failed to specifically allow consideration of mitigation evidence, the Supreme Court upheld the statute because the Texas Court of Criminal Appeals "indicated that it will interpret this second question so as to allow a defendant to bring to the jury's attention whatever mitigating circumstances he may be able to show." *Jurek v. Texas*, 428 U.S. 262, 272 (1976).  Thus, juries in Texas were allowed to consider mitigation evidence, although they were never told so.  Of course the infirmities of the pre-1991 sentencing scheme were brought to light when the Supreme Court held that Johnny Paul Penry had been sentenced to death in violation of the Eighth Amendment because his jury had not been adequately instructed with respect to mitigating evidence. *See Penry v. Lynaugh*, 492 U.S. 302 (1989) (*Penry I*); *Penry v. Johnson*, 532 U.S. 782 (2001).  As a result, the Texas death penalty sentencing scheme was changed to expressly allow juries to consider mitigation evidence.

In 1991 the Texas legislature amended Code of Criminal Procedure art. 37.071 to include a true "mitigation special issue." See 1991 Tex. Sess. Law Service Ch. 838 (S.B. 880). Related to Holiday's case, the two special issues in question became the following:

1)  Whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society;

2)  Whether, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentenced be imposed.

*Id*.; *See* TEX. CODE CRIM. PRO. art. 37.071 (Vernon Supp. 1993-present).

The jury could not answer special issue no. 2 "no" unless they agreed unanimously, and they could not answer special issue no. 2 "yes" unless ten or more of them agreed that mitigation called for a life sentence. *Id*.  Jurors are not told that a single juror's belief that life is appropriate will result in a life sentence. *Id*.

The Fifth Circuit repeatedly held that Mills did not apply to the pre-1991 sentencing

scheme because "Mills involve[d] statutory schemes different from the Texas sentencing statute

and different legal standards." *See, e.g., Webb v. Collins*, 2 F.3d 93, 96 (5th Cir. 1993).  This

was true, as the pre-1991 sentencing scheme did not actually involve a mitigation special issue.

However, the post-1991 sentencing scheme does include a mitigation special issue and is

therefore much closer to the sentencing scheme discussed in Mills.  The problem is that the Fifth

Circuit, in its decisions related to the post-1991 sentencing scheme, has relied on decision based

on Pre-1991 sentencing schemes.  Holiday has not discovered cases which address whether or

not the change in the sentencing scheme affects the analysis of this issue.

For example, the state cites *Druery v. Thaler*, for the propositions that *Teague* bars

review of this claim and that *Mills* does not apply to Texas' sentencing scheme. 647 F.3d 535,

543 (5th Cir. 2011) *cert. denied*, 132 S. Ct. 1550 (U.S. 2012); Reply at 110.  *Druery* cites

*Miller v. Johnson* for the idea that "Mills is not applicable to the capital sentencing scheme in

Texas." *Id*. (citing *Miller v. Johnson*, 200 F.3d 274, 288 (5th Cir.2000)).  *Miller* however is not

applicable to the issue currently before this court for many reasons.  First, "the jury at [Miller's]

trial was instructed what to do if they did not reach agreement as set forth in the charge. The jury

instructions provided that if there was any special issue on which the vote of the jurors was not

unanimously 'yes' or not at least ten in favor of an answer of 'no,' there should be no answer for

that special issue and the presiding juror should not sign his or her name to any answer form for

that special issue." *Miller*, at 288. Had this happened in Holiday's case, this claim would not

have been presented.  Further, *Miller* concerned the pre-1991 jury capital sentencing scheme

which was not used in Holiday's case. *Id*.  However, it is important that the *Miller* court did

recognize that "*Mills* requires that each juror be permitted to consider and give effect to

mitigating evidence when deciding the ultimate question whether to vote for a sentence of death." *Id.* Holiday argues that the post-1991 sentencing scheme does not allow each juror to consider and give effect to mitigating evidence.

*Druery* also cited *Hughes v. Dretke*, 412 F.3d 582, 593–94 (5th Cir.2005) for the idea that the instant claim is *Teague* barred. *Druery*, 647 F.3d at 543. Unexplainably, although *Hughes* involved a crime committed after 1991, the Fifth Circuit decision only discusses the application of the "future dangerousness" special issue. No mention was made of the mitigation special issue. Further, the Fifth Circuit in *Hughes* ruled only that the claim was *Teague* barred, relying on *Miller* (discussed above) and *Jacobs v. Scott*, 31 F.3d 1319, 1328–29 (5th Cir.1994). *Jacobs* was decided based on the pre-1991 sentencing scheme. *Jacobs*, 31 F.3d at 1328-29. *Jacobs* decided that the 12-10 claim in that case was procedurally defaulted. *Id.* It however went on to explain that the substantive argument was meritless because "[t]he [pre-1991] law in Texas is completely different from that in *Mills*." *Id*. at 1328. This is true, because the pre-1991 law in Texas did not involve a mitigation special issue. Also, much like the *Miller* case, the jurors in *Jacobs* were "instructed that each juror was to make his or her decision independently." *Id*. at 1329. No such instruction was given in Holiday's case. Finally, the Fifth Circuit once again pointed out that *Mills* has been interpreted to mean "'each juror [must] be permitted to consider and give effect to mitigating evidence when deciding the ultimate question whether to vote for a sentence of death.'" *Id*. (citing *McKoy v. North Carolina*, 494 U.S. 433, 442–43 (1990)).

Holiday asserts that Texas' post-1991 capital sentencing scheme, as applied in his case, violates the Eighth and Fourteenth Amendments. The distinction between the pre-1991 and post-1991 sentencing schemes has apparently not been addressed by the Fifth Circuit, which continues to rely upon the pre-1991 determination of this claim, for that reason Fifth Circuit

precedent does not dictated the outcome to this claim.  As Holiday urged in his writ, the current

sentencing scheme in Texas in violation of the well-recognized holding of *Mills* that

"'each juror [must] be permitted to consider and give effect to mitigating evidence when

deciding the ultimate question whether to vote for a sentence of death.'" *Id*. (citing *McKoy v.*

*North Carolina*, 494 U.S. 433, 442–43 (1990)).

The Seventh Circuit also agrees that *Mills* requires individual jurors be permitted to

consider mitigation and that individual jurors not be precluded from granting mercy because of

the mistaken belief that their individual vote for life is meaningless:

> The same analysis applies in Kubat's case.  Kubat's jurors were never expressly informed
> in plain and simple language that if even one juror believed that the death penalty should
> not be imposed, Robert Kubat would not be sentenced to death.  On the contrary, the
> instructions emphasized unanimity.  There is a substantial possibility that one or more of
> Kubat's jurors might have been precluded from granting mercy to Kubat because of a
> mistaken belief that the sufficiency of mitigating factors had to be found unanimously.

*Kubat v. Thieret*, 867 F.2d 351, 372 (7th Cir. 1989).

As applied to the post-1991 sentencing statute, this claim is not Teague barred. Under

Teague, new rules of constitutional criminal procedure will not be announced on federal habeas

review unless an exception applies. *Webb v. Collins*, 2 F.3d 93, 95 (5th Cir. 1993) (ci*ting Teague*

*v. Lane*, 489 U.S. 288, 316 (1989).  However, Holiday asserts that applying *Mills* as interpreted

by *McKoy* to Texas' post-1991 sentencing scheme does not create a new rule. "[A] case

announces a new rule when it breaks new ground or imposes a new obligation on the States or

the Federal Government.... To put it differently, a case announces a new rule if the result was not

dictated by precedent existing at the time the defendant's conviction became final." *Teague*, 489

U.S. at 301.

That jury instructions which mislead individual jurors about their ability to give effect to

mitigating evidence are in violation of the Eight and Fourteenth Amendments does not break

new ground. Indeed, the Supreme Court has long held that "*Mills* requires that each juror be permitted to consider and give effect to mitigating evidence when deciding the ultimate question whether to vote for a sentence of death." *McKoy*, 494 U.S. at 442–43 (1990)).  This well recognized Supreme Court rule dictates that the current Texas sentencing scheme is unconstitutional it requires jury instructions which mislead individual jurors to believe that their individual vote for life is meaningless unless more at least nine of their follow jurors agree.

Concerning the pre-1991 sentencing scheme, the Fifth Circuit ruled that "Mills may inform the analysis of his claim, but [it does] not dictate the constitutional rule urged by [the petitioner]." *Webb v. Collins*, 2 F.3d 93, 96 (5th Cir. 1993).  The basis of this ruling was that "Mills involve[d] statutory schemes different from the Texas sentencing statute and different legal standards." *Id*. At the time that this line of argument was adopted by the Fifth Circuit, Texas did not use the mitigation special issue.  By adopting a mitigation special, Texas law was brought much closer in line with the sentencing scheme found in *Mills*. Further, the Supreme Court has found that differences in underlying sentencing schemes do not necessarily provide a basis for denying relief under *Teague*. *Stringer v. Black*, 503 U.S. 222, 229 (1992) ("We acknowledge there are differences in the use of aggravating factors under the Mississippi capital sentencing system and their use in the Georgia system in Godfrey. In our view, however, those differences could not have been considered a basis for denying relief in light of precedent existing at the time petitioner's sentence became final.").

As we have seen from our discussion of the Supreme Court's demands in *Smith I*, *Smith II*, and *Penry II* above, the Court requires that jurors be told accurate information in order to obtain accurate and constitutionally reliable decision making.  When a state manipulates jurors by giving them false information, or restrict their decision making so that jurors are bound by

oath from rendering a decision that reflects their sincere beliefs, that state has introduces

constitutionally intolerable capriciousness --- precisely what we have here.

In conclusion, because the Fifth Circuit has not addressed whether the 1991 change to

Texas' sentencing scheme alters the analysis of this issue this Court should not be bound by prior

precedent and should address this issue on the merits.  Not a single note was sent out asking what

should be done in the event of a jury deadlock.  This no doubt was because the jury instructions

made it clear that the jury could return no answer except for yes or no to the special issues.

Although clear, this instruction was both an incorrect statement of Texas law and in violation of

the United States Constitution.

**IV.**    ***GRIFFIN* DOCTRINE IS NO WHERE NEAR AS DICHOTOMOUS AS THE STATE URGES**

The State offers a misleading characterization of *Griffin* doctrine concerning a

defendant's election not to testify.  (State's Br. at 50).

Professor Cook explains that, "it is improper for the prosecutor to state to the jury that the

accused has a right not to testify."  Joseph G. Cook, *Constitutional Rights of the Accused* §21.6

(3d ed. 1996).  Professor LaFave makes an empirical observation that "the defense is most likely

to be successful where the comment…included a pointed reference to the defendant,…".  W.

LaFave, J. Israel, N. King, & O. Kerr, *Criminal Procedure* §24.5(b) (3d ed. 2007).  Rosenberger

easily captures LaFave's flag when the Prosecutor made the statements detailed on pages 92-94

of his writ.

> Argument by the government making indirect reference to the defendant's failure  to
> testify may be so prejudicial that there is reversible error even though the defendant did
> not object to the argument nor move to instruct the jury to disregard.

Mark S. Rhodes, *Orfield's Criminal Procedure Under The Federal Rules*, §26:474 (2d ed. 2012)
(pinpoint citing *Benham v. United States*, 215 F.2d 472, 473 (5th Cir. 1954) (reversing when

prosecutor said, "He doesn't have the courage to come up before you and say, 'Yes, I did it.'" and no contemporaneous objection was made)).

This logic applies with even greater strength to Holiday's situation where it is uncontroverted that Holiday made a contemporaneous objection to the Prosecutor's repeated summation misconduct.

## V.      Lethal Injection

The State's arguments concerning lethal injection (State's Br. at 103-106) are misplaced. Even if Holiday's claim is premature, it cannot be defaulted.  "Ford claims are unique among ineligibility arguments in that they are habeas relief issues based only on a prisoner's status at the time of a potential execution."  Lee Kovarsky, *Death Ineligibility and Habeas Corpus*, 95 CORNELL L. REV. 329, 355 (2010) (citing *Stewart v. Martinez-Villareal*, 523 U.S. 637, 644-45 (1998)).

## VI.      Unlawfully Circumscribed Cross-Examination

The State miscomprehends the rule against undue limitation on the scope of cross-examination.  (State's Br. at 60-62).  Professors Mueller and Kirkpatrick explain:

> Rule 611 is not an invitation to adopt a blanket rule  authorizing unrestricted cross-examination on all relevant issues in particular courtrooms, or before particular judges, or in particular classes of cases.  Instead, the idea is that judges may authorize broader cross-examination on a case-by-case basis when a particular reason for doing so appears.

3 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 6:70 (West 2007).

Even when the witness is one other than the accused, courts of appeals have long found reversible error when District Courts permitted a cross-examiner too much latitude resulting in serious disruption for no good reason.  *See, e.g., Lewis v. Rego Co.*, 757 F.2d 66 (3d Cir. 1985) (reversing where, in product suit, it was error to let defense cross-examine fact witness on his

opinion on cause of rupture in propane cylinder; cross-examiner used occasion to put substance

of repudiated report in front of jury); *Reagan v. Brock*, 628 F.2d 721 (1st Cir. 1980) (in a

contaminated food suit, defendant testified on direct examination that the kitchen was clean and

proper in the summer of 1976; cross-examination about health code violations in the summer of

1977 went beyond the scope of direct).

Respectfully submitted,

/s/ Seth Kretzer

_____

Seth Kretzer
Law Offices of Seth Kretzer
440 Louisiana Street
Suite 200
Houston, TX 77002
(713) 775-3050 (DIRECT)
seth@kretzerfirm.com (email)

*James W. Volberding*

_____

**JAMES W. VOLBERDING**
SBN: 00786313

Plaza Tower
110 North College Avenue
Suite 1850
Tyler, Texas 75702

(903) 597-6622 (Office)
(903) 597-5522 (fax)
*e-mail: jamesvolberding@gmail.com*

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document was forwarded to

all counsel of record on this 22nd day of January 2013 through the ECF system.

/s/ Seth Kretzer

_____

Seth Kretzer